THE STATE, A. B. AVIS, PROSECUTOR, v. THE MAYOR, &c., OF VINELAND.

1. An ordinance of the borough of Vineland, passed under the Borough act of 1878 (*Pamph. L., p.* 407), declaring healthy growing trees, which had been planted over twenty-five years ago by the owner of land, on or near the edge of the roadway of a street in that borough, a nuisance and obstruction and directing their removal as such, *held* void.

2. *Quære* as to powers of borough under act of 1883 (*Pamph. L., p.* 96), and as to fact of dedication of street *cum onere* in this case.

On *certiorari.*

Argued at February Term, 1894, before Justices DIXON and ABBETT.

For the prosecutor, *Howard Carrow* and *Charles K. Landis, Jr.*

For the defendant, *Royal P. Tuller.*

The opinion of the court was delivered by

ABBETT, J.   The writ of *certiorari* in this case removed into this court an ordinance passed by the mayor and council of the borough of Vineland, May 9th, 1893, entitled "An ordinance for the removal of obstructions from Landis avenue and to declare what are nuisances therein between Eighth street and East avenue, within the borough of Vineland." This ordinance declared that certain trees on the northern and southern border of Landis avenue, between Eighth street and East avenue, and the grassy portions of said avenue on each side, are obstructions and nuisances in said avenue, and the road committee was directed to remove the same May 18th, 1893.

The borough claims the right to pass this ordinance and remove the trees and grass plots in question under paragraph 2, subdivision 1, of section 12 of "An act for the formation of borough governments," approved April 5th, 1878. *Pamph. L., p.* 407 ; *Rev. Sup., p.* 46, § 14, ¶ 1.   This paragraph gives the mayor and council of said borough power to pass, enforce, alter or repeal ordinances to take effect within the limits of said borough for the following purposes, to wit : "1. To declare what shall be considered nuisances in the streets, roads, lots and places in said borough and to prevent and remove all obstructions, encumbrances and nuisances in and upon any street, road, lot, sidewalk, enclosure or other place in said borough."

This language does not authorize municipal authorities to

declare anything to be a nuisance which cannot be detrimental to the health of the city, or dangerous to its citizens, or a public inconvenience. *State* v. *Jersey City*, 5 *Dutcher* 170, 175. An ordinance passed without notice to the prosecutor, directing a committee to remove certain objects upon lands which had been occupied by the prosecutor for twenty-five years, because they were encroachments upon a street, held void. The power to prevent and remove all encroachments in or upon any street is only a police power and does not extend to cases of a doubtful or uncertain nature and which require to be first lawfully determined. *Dawes* v. *Hightstown*, 16 *Vroom* 127, 129. See, also, *Newark and South Orange Horse Railroad Co.* v. *Hunt*, 21 *Id.* 308, 314, 316. The power to declare what is to be considered nuisances in streets and to remove encroachments and nuisances from highways is a police power, ministerial in its nature, and designed to relieve the public from such obstructions in streets as are apparent or readily ascertainable without the necessity of adjudication. The power is capable of exercise only to the extent that the right is clear or reasonably known, and not so as to invade rights which, from their doubtful or uncertain nature, require a lawful determination. *Dawes* v. *Hightstown*, 16 *Id.* 501, 503, 504. To say to a man that he shall not use his property as he pleases, under certain conditions, is to deprive him, *pro tanto*, of the enjoyment of such property. To find conclusively against him that a state of facts exists with respect to the use of his property or the pursuit of his business which subjects him to the condemnation of the law, is to affect his rights in a vital point. The right to abate nuisances, whether we regard it as existing in the municipalities or in the community, or in the land of the individual, is a common law right and is derived in every instance of its exercise from the same source—that of necessity; but the necessity must be present to justify the exercise of the right, and whether present or not, must in ordinary cases be submitted to a jury under the guidance of a court. The finding of a municipal body can have no effect whatever, for any

purpose, upon the ultimate disposition of a matter of this kind. It is for the courts. *Hutton* v. *City of Camden*, 10 *Id.* 122, 130, 131.

A thrifty tree in a public highway, the fee of the soil of which is in the abutting landowner, belongs to the abutting landowner (unless it has been planted by the public authorities), and he may have trespass against any person who cuts down any such trees growing on the side of the road and left there for shade or ornament, for the freehold remains subject only to the easement or right of passage in the public. Nothing is more common everywhere in our villages and agricultural districts than for the owners and occupiers of the soil to have fruit, shade and ornamental trees along the line of the public roads—sometimes in the line of the roads, sometimes on each side of the line—and it has been held that a road overseer cannot arbitrarily cut them down, and if he did it in an improper case and maliciously, he was held liable to exemplary damages upon suit of the owner of the fee of the soil. *Winter* v. *Peterson*, 4 *Zab.* 524, 527, 529; cited with approval in *Wuesthoff* v. *Seymour and Wheelock*, 7 *C. E. Green* 66, 70; *Bloom* v. *Stenner*, 21 *Vroom* 59, 60. These standing trees were part of the inheritance, and a sale of them would have been a sale of an interest in land under the statute of frauds. *Slocum* v. *Seymour*, 7 *Id.* 138.

If these trees were nuisances, trespass would not lie for their destruction by municipal authority. It is clear that these thrifty, ornamental shade trees are neither obstructions nor nuisances to Landis avenue, and the attempt to abate them as such is an exercise of arbitrary power unwarranted in law under the act invoked by the borough authorities.

There is also a serious question in this case as to the extent of the dedication of that part of Landis avenue referred to in the ordinance. Charles K. Landis, the owner of lands at Vineland and its founder, laid out the lands in question (with other lands), and he testifies that his surveys and survey-books show the line of shade trees and grass plots, and the lands show it, as they have been in use for about thirty years

in that section. He says that the trees sought to be removed are fine, handsome trees that have been growing there for twenty-five years or more; that they were set out in accordance with stipulations under which he sold the property, and that his surveyors, under his directions, gave the stakes to each settler where trees should be planted *in accordance with the general system;* that Landis avenue was of the width of one hundred feet, to wit, a double row of shade trees upon that portion of Landis avenue; that the reason why he laid the avenue out one hundred feet wide was not to have the whole hundred feet used as a roadway, but that it might serve the purpose of beauty and ornamentation, and that the central part only, which he dedicated for a roadway, should be used for that purpose; that his contracts for the lots in this section stipulated for the planting of a double row of shade trees on the sides of the road at proper distances apart; that the width of the avenue which he dedicated to the public, *under the restriction mentioned,* is one hundred feet. The map on file in the county clerk's office appears to have been filed by Landis township and not by Landis himself. When Marcus Fry, surveyor, was examined, a map or plan was put in evidence. He testifies that this map or plan was made from actual surveys; that these trees were planted according to the agreement under which these lands were sold; that the roadway has always existed as it is now, between these two rows of trees; that the map offered in evidence shows the measurement of the streets, the sidewalks and the position of the grass plot and trees; * * * that on the original survey of Landis avenue there is something showing the dedication as shown on the map or plan offered in evidence; that the original surveys show that the trees were to be set out as shown on this plan.

Dedication of a street must arise from some act of the owner of the land, and may be made *cum onere. State* v. *Society, &c.,* 15 *Vroom* 502; *Ayres* v. *Pennsylvania Railroad Co.,* 19 *Id.* 44, 48; 23 *Id.* 405, 410.

The public cannot get anything more than he gives, and if

he dedicates a street one hundred feet wide, subject to the restrictions and use as mentioned, the public takes subject to the restrictions. The filing of a map and selling lands thereby would be evidence of a dedication, but if he did not file the map and did not adopt it, by reference thereto in his deeds, the filed map would not be conclusive evidence against him, and if the map he made, and sold lots by, showed the trees set out to be as testified to by the surveyor, it would be a question of fact to be determined by judicial authority as to whether this dedication of Landis avenue was not subject to the setting out and existence of these trees, in accordance with Mr. Landis' scheme of ornamentation and use of this avenue. (See *State* v. *Society, &c.*, 15 *Vroom* 504, 507, as to existence of these trees from the beginning as evidence of the making of dedication and acceptance thereof subject thereto.) These trees are sixteen feet apart, are all live and thrifty trees, from twenty to forty feet high, and from six to twenty inches in diameter. They do not interfere with the roadway or obstruct any of the passageways on the avenue. It cannot be claimed with any show of reason or justice that these trees under these circumstances are nuisances or obstructions in Landis avenue which may be summarily removed as such by the borough authorities.

It is not meant to intimate in this case what power is given to the borough under the act entitled "A supplement to an act entitled 'An act for the formation of borough governments,' approved April 3d, 1878," approved March 13th, 1883. *Pamph. L., p.* 96 ; *Rev. Sup., p.* 49, § 30. That act gives the borough authorities "general supervision, management and control of the streets, avenues, roads, public places and sidewalks within the borough." The destruction of these trees as nuisances or obstructions cannot be justified under this act. Should the borough attempt to exercise absolute control over Landis avenue, under this act, the question will then properly arise as to whether or not the dedication of Landis avenue was not a *restricted dedication*, contemplating the existence of these trees as part of the design and plan of

the dedicator. If the dedication was thus restricted, it would then be a question as to whether any such change in the street, in removing these trees, is not a taking of property, for which the owner of the soil is entitled to damages.

The ordinance is set aside, with costs to the prosecutor.