JOSEPH P. STREUBER, State's Attorney, *ex rel.* Fred R. Heskett *et al.* Appellees, *vs.* THE CITY OF ALTON *et al.* Appellants.

*Opinion filed October 28, 1925—Rehearing denied December 4, 1925.*

1. PLATS—*land dedicated to restricted use cannot be applied to any other use.* An owner making a dedication of land to the public has the right to specify the particular use to which the land is to be devoted and to impose such restrictions as he sees fit on such use, and the land cannot be applied to any other use nor can the restrictions be destroyed.

2. MUNICIPAL CORPORATIONS—*public, through State's attorney, may restrain city from changing use of land to which it was dedicated.* Without showing any special injury peculiar to relators, the public, through the State's attorney, may prosecute a suit to restrain a city from using land for another purpose than that to which it was dedicated by plat, but in said action the State's attorney has no authority to question the validity of an election on a proposition to issue bonds for carrying out the use to which the city proposes to devote the property.

3. SAME—*property dedicated to public for landing purposes can not be used as site for city hall.* Where the original owner, in ded-

icating land to public use, has specified on the plat that certain ground is to be used for landing purposes for vessels or boats, the city has no authority to appropriate any part of the ground for the erection of a city hall.

4. INJUNCTION—*when decree goes beyond power of court.* A decree enjoining the erection of a city hall on ground dedicated for a public landing cannot require that the defendant forthwith remove the foundations of a former city hall which had been destroyed by fire, as the city is trustee of the property for the public, and the court cannot direct its management except to prevent the diversion of the property to an unauthorized use.

FARMER, J., dissenting.

APPEAL from the Circuit Court of Madison county; the Hon. J. FRANK GILLHAM, Judge, presiding.

GILSON BROWN, and JOHN F. McGINNIS, JR., for appellants.

B. J. O'NEILL, and WILLIAM P. BOYNTON, for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The State's attorney, on the relation of four electors and tax-payers of the city of Alton, filed a bill in the circuit court of Madison county to restrain the city from rebuilding on its original site the city hall, which had been destroyed by fire; to require it to restore the site, as nearly as might be, to its original condition; and to decree that an election upon the question of a certain bond issue for $75,000 was void and that the proceeds of the bonds could not be legally used for repairing, altering or furnishing the city hall. The decree of the court granted the injunction but refused the other relief prayed for, the city appealed, and the State's attorney has assigned cross-errors.

In the year 1818 Rufus Easton laid out the town of Alton, a portion of the plat of which appears in the report

of the case of *City of Alton* v. *Illinois Transportation Co.*
12 Ill. 38.    This case involves a part of that plat marked
"Ground for use of landing."    The plat contained the fol-
lowing statement:

"*Memorandum and condition.*—This town is laid out on
the express terms and conditions that the exclusive right of
ferrying to and from the same is reserved to the under-
signed proprietor of said town, his heirs and assigns for-
ever, and the landing ground, streets, roads, commons and
ways to and from the Mississippi river are to be used as
rights of way in common only to all persons, except as to
the right of ferrying, as aforesaid, which right and privi-
lege of ferrying or establishing or keeping of a ferry or
ferries in said town cannot be acquired by any owner or
purchaser or grantee of a lot or lots, or any body politic or
corporate, or any person whatsoever, but by purchase or
descent from the proprietor, his heirs or assigns, and it is
expressly understood that all the streets, roads, commons
and ground set apart for landing of vessels or boats or for
loading or unloading or other public use, are laid out on the
terms and conditions above expressed, of which all persons
will take notice."

The town of Alton was incorporated in February, 1833.
In 1837 it was incorporated as a city and in 1877 became
incorporated under the general Cities and Villages act.    It
now has a population of 26,000.    About sixty or seventy
years ago the city of Alton constructed on a portion of the
northeast corner of the ground for use of landing marked
on the plat, a city hall 110 feet long and 45 feet wide, with
sidewalks around the west, north and east sides.    It was
three stories high, of brick on a stone foundation, with slate
roof, and after its erection was used for the ordinary pur-
poses of a city hall and a portion of it a city jail.    The tract
marked "ground for use of landing" is the only ground
now located in the business district of Alton bordering on
the Mississippi river and available for use of landing which

connects with that portion of the levee now used for landing
freight and passengers by various steamboat lines plying on
the Mississippi river between Alton and points on the river.
In June, 1923, the city council adopted a resolution for a
special election to be held on August 7, 1923, for the pur-
pose of voting upon an ordinance for the issuing of bonds
to the amount of $75,000 for the purpose of repairing,
altering and furnishing the city hall. The resolution was
adopted, the election held, the bonds were issued and the
proceeds are in the custody of the city treasurer. After
the election, pursuant to a resolution of the city council,
the city, through the mayor and city clerk, entered into a
contract with the McDonald Construction Company for the
remodeling of the city hall in accordance with bids re-
ceived, and after the building had been vacated a fire oc-
curred, practically destroying the building except the foun-
dation, the basement and the vault. It was the intention of
the mayor and city council to proceed with the reconstruc-
tion of the building on the old site under the contract entered
into before the fire occurred, when on September 24, 1924,
notice was served upon them by the relators demanding that
they cease to proceed with that work. The council refused
to comply with this request, and thereupon the bill in this
case was filed by the State's attorney, making the city, the
mayor, the city clerk, the city comptroller and the aldermen
defendants. An answer was filed, testimony was taken be-
fore the master, the cause was heard by the chancellor, and
at the March term, 1925, the decree appealed from was
entered.

The Mississippi river flows from west to east along the
south side of the tract in question. According to the origi-
nal plat the west boundary of the ground for use of landing
was a stream known as Fountain creek. Since the town
was laid out Fountain creek has been converted into a sewer
and covered with a stone arch, and the surface above it is
now occupied by a street known as Piasa street. The ground

indicated by the plat originally amounted to 2.49 acres. The river has since receded and by accretions the tract has grown, until it now contains 5.89 acres. The ground for use of landing has been graded and paved, and is occupied by railroad tracks, a union passenger station, another railroad passenger station, and an interurban traction line of the Alton, Granite City and St. Louis Railroad Company, as well as the city hall.

An owner making a dedication of land to the public has the right to specify the particular use to which the land is to be devoted, to impose such restrictions as he sees fit on such use, and the land cannot be applied to any other use, nor can the restrictions be destroyed. *City of Alton* v. *Illinois Transportation Co. supra; City of Jacksonville* v. *Jacksonville Railway Co.* 67 Ill. 540; *Village of Princeville* v. *Auten,* 77 id. 325; *Village of Riverside* v. *MacLain,* 210 id. 308; *South Park Comrs.* v. *Ward & Co.* 248 id. 299; *McPike* v. *Illinois Terminal Railroad Co.* 305 id. 298; *Melin* v. *School District,* 312 id. 376.

The appellants argue the proposition that a violation of complainants' rights and a special injury peculiar to them distinct from the general injury experienced by the public must be shown to authorize an injunction, and their argument treats the bill as if it were a suit by the relators, as individuals, to restrain the infliction of a private injury upon them. This argument entirely overlooks the nature of the suit. It is brought by the State's attorney, representing the public,—that is, the People of the State of Illinois,—and it is the public injury which constitutes the cause of complaint. The presence of the relators in the suit is a mere incident not at all essential to the maintenance of the action. The *gravamen* of the charge is the diversion of the property by the city from the purpose for which it was dedicated.

In *McAlpine* v. *Chicago Great Western Railway Co.* 68 Kan. 207, a strip of land lying along the bank of the Missouri river in Kansas City, Kansas, was dedicated in

1859 by the proprietors of the original plat to the public by the use of the word "levee" on the plat. At the time this plat was made the Missouri river was navigated quite extensively by both freight and passenger boats and continued to be navigated until 1866, when navigation fell off because railroads afforded more rapid and convenient communication, and also because the river became less navigable and the landing less feasible on account of the diversion of the current to the eastern or Missouri shore, the western shore receiving accretions which increased the tract to more than twice its width at the time of the dedication. A suit was brought by the heirs of the proprietors of the original plat on the theory that the land was dedicated to the public for a levee or landing place for boats or commerce on the river; that the levee never was improved for that purpose by the city or any person or corporation; that no boats had landed at it for twelve years, and that in all human probability it would never again be used for a landing; that it had been permanently abandoned by the city authorities because the decreased flow of water made navigation of the river impossible, and that the permanent change of the river from the Kansas to the Missouri bank would make impossible the approach by steamboats to the levee. The plaintiffs claimed that by reason of these facts the title had reverted to the plaintiffs as the heirs of the original proprietors, but it was held that all these facts did not show such an abandonment by the public as to cause a reverter, the court saying: "Whenever the dedication is complete, the property thereby becomes public property, and the owner loses all control over it, or right to its use, and neither can the public divert it from that use, nor can it be lost by adverse possession."

"Property unconditionally dedicated to public use or to a particular use does not revert to the original owner, except where the execution of the use becomes impossible. If the dedicated property be appropriated to an unauthorized

use, equity will cause the trust to be observed or the obstruction removed." (Dillon on Mun. Corp.—4th ed.—sec. 653.)

The case of *McPike* v. *Illinois Terminal Railroad Co. supra,* also involved a dedication to the public of lands in the city of Alton as "public grounds of the city, never to be owned as individual or private property." The city, however, made a lease of a part of the lands for a term of twenty-five years at an annual rent of $10. In an action brought by the lessee to enjoin the railroad company from trespassing and building a railroad track on the leased premises, in violation of the rights of the complainant as lessee and of his rights as a citizen and tax-payer of the city of Alton and of all the citizens of Alton, it was held that the lease was void and afforded no basis for the issuance of an injunction; that as his lease was void the bill showed no special damage to the complainant, and that as a citizen and tax-payer of the city he had no right to the injunction under the averments of his bill.

The city had no authority to appropriate any part of the ground for use of landing for the erection of a city hall, (*Melin* v. *School District, supra,*) and the decree of the court properly enjoined the defendants from further prosecuting the building of a city hall on the ground for use of landing. It was not proper, however, to require the appellants forthwith to remove from the ground the stone foundation walls, concrete vault, brick, iron, stones and debris, and to restore the ground and site occupied by the city hall, as nearly as might be, to the same condition as it was in prior to the construction of the building. The city is the trustee of the property. It may not divert it to a use not authorized by the dedication, but it has the management and control of the property and is not subject to the direction of the court as to such management and control unless it is diverting the property to an unauthorized use. The

319—4

time and manner in which it shall dispose of the parts of the building remaining on the premises is a matter which the city council may determine.

The court made no order in regard to the prayer of the bill that the court decree that the election with reference to the bond issue is null and void and that the funds derived from the sale of the bonds cannot be legally used for the purpose of repairing, altering and furnishing the city hall, and the appellees assign the failure to hold the election void as cross-error. The bill furnished no basis for the court to make a decree on the question of the validity of the election. Suit was brought by the State's attorney, representing the public, and the State's attorney has no authority to question the validity of an election on a proposition to issue bonds. Tax-payers whose private interests are involved may maintain such a bill in equity, but the public at large, whom the State's attorney represents, pay no taxes and have no property interests in the question of the validity of the election, or the bonds issued in consequence of it, which the State's attorney is authorized to protect.

The decree will be modified by striking out that part of it which requires the defendants to remove from the ground "the stone foundation walls, concrete vault, brick, iron, stones and debris now there remaining, and restore said ground and site so heretofore occupied by said city hall building as aforesaid, as nearly as may be, to the same condition as it was in prior to the construction of such building upon the site aforesaid." In all other respects the decree is affirmed.  *Decree modified and affirmed.*

Mr. JUSTICE FARMER, dissenting.