BOROUGH OF FENWICK *v.* TOWN OF OLD SAYBROOK

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued April 4—decided May 15, 1946

*Joseph F. Berry,* with whom was *William E. C. Bulkeley,* for the appellant (plaintiff).

*Morris Tyler,* for the appellee (defendant).

JENNINGS, J. The question to be decided is whether property owned by the plaintiff, a municipal corporation, is exempt from taxation under the provisions of General Statutes, § 1163 (4). The statute reads: "The following-described property shall be exempt from taxation: . . . (4) except as otherwise provided by law, property belonging to, or held in trust for, a municipal corporation of this state and used for a public purpose. . . ."

In the beginning of its application to the court, the borough states that it is "appealing from the Board of Assessors" of the defendant town. Such an appeal is unknown to our law. The application was evidently brought under the provisions of § 1201 of the General Statutes as amended by § 165f of the Supplement of 1941. In two recent cases we have pointed out that the remedy given by this statute is not an alternative to an appeal from the board of relief and that a judgment under it is not directed to bringing about a change in the assessment list, but that the statute is intended to afford relief against the collection of an illegal tax. *State ex rel. Waterbury Corrugated Container Co.* v. *Kilduff*, 128 Conn. 647, 649, 25 A.2d 62; *Cohn* v. *Hartford*, 130 Conn. 699, 702, 37 A.2d 237. The application to the court in the instant case complied in all respects with the requirements of § 165f and both parties have argued the issue as though it was within the provisions of that statute. We shall, therefore, disregard the description of the proceeding as an appeal from the board of assessors and treat it as an application under the statute for the relief it authorizes. This relief, available under the plaintiff's general prayer for relief, would be a judgment that the taxes based on the assessment in question are

not justly due. *State ex rel. Waterbury Corrugated Container Co.* v. *Kilduff*, supra.

The following facts are not in dispute. The borough of Fenwick is a peninsula of land containing about two hundred and thirty-five acres and bounded northerly by the waters of a cove; easterly, by the Connecticut River; southerly by Long Island Sound; and westerly, by other land in the town of Old Saybrook, within which the borough lies. The terrain is generally flat and not greatly above the level of the surrounding waters. The borough is inhabited by a small colony and has no year-round residents. It was chartered in 1899 by special act of the General Assembly. 13 Spec. Laws 231. In 1899, a corporation known as the Fenwick Hall Company was organized to take over certain properties within it. 13 Spec. Laws 176. In the fall of 1942, before the taxing date, October 1, the Fenwick Hall Company, Newton C. Brainard and Morgan B. Brainard made a gift to the borough of certain lands within it. The lands so deeded constituted 62 per cent of the total area of the borough or one hundred and forty-six acres. The warden and burgesses of the borough accepted these gifts.

The quitclaim deeds from the three donors all contained a provision substantially as follows: "The above described premises are conveyed to the releasee herein so long as used for park or recreational purposes in accordance with the terms of an agreement between the releasee herein and the releasor herein and other parties, dated September 17, 1942, to be recorded in Old Saybrook Land Records, but if said premises are no longer used in accordance with the terms of said agreement for either or both of the said purposes, then said premises, with all additions and improvements thereon, shall re-

vert to the releasor herein, or its successors or assigns."

The agreements entered into, dated September 17 and 19 respectively, and recorded in the Old Saybrook land records, stated that in consideration of the conveyances made the borough covenanted and agreed with the releasors as follows: "1. Said premises shall be used for park or recreational purposes in accordance with the terms of said deeds and of this agreement. 2. No structure shall be placed or erected on the premises except such structures as are reasonably necessary and incidental to use for park or recreational purposes. No bathhouses may be erected on the premises. No building more than one story in height may be placed on the premises. 3. No sale of food, drink or refreshments of any kind shall be permitted on the premises. 4. No camping or picnicking shall be permitted on the premises."

The deed from the Fenwick Hall Company excepted from the conveyance and reserved to itself a "strip of land six feet in width measured from mean high water level" along all the water-front property of the cove which borders the borough on the north, a strip thirty feet in width measured from mean high water along all of its property bordering on the Connecticut River on the east, and the beachfront property bordering on Long Island Sound on the south.

Included in the area conveyed were a nine-hole golf course and two tennis courts. A park commission was appointed by the warden and burgesses on April 8, 1943, and park rules and fees for the use of the golf course and tennis courts were approved on June 28, 1943. Cards were printed listing the park rules and the fees for the use of the golf

course and tennis courts and these were posted at the Riversea Inn, a summer hotel in the borough accommodating about one hundred guests, at the first tee of the golf course and at the tennis courts. No signs designating the property conveyed had been posted on October 1, 1943.

Guests at the Riversea Inn had the use of the golf course both before and after the conveyance. After the conveyance, the use of the golf course and tennis courts was open to anyone paying the fees. These fees were about half what they were before the conveyance with the exception of the daily fee, which remained the same.

The borough made a rather elaborate attack on the finding, claiming that both additions and deletions should be made. This attack centers on the finding that the public made no use of the property between September 17, 1942, and October 1, 1943, the dates in question under the assessment. The borough claims that this finding is made without evidence and that, on the contrary, it was undisputed that, as a matter of fact, the public made extensive use of the property conveyed during the period under consideration. There is no evidence to support this critical finding and it must be stricken out. The finding, in connection with the memorandum of decision, establishes the fact that the premises in question were extensively used, at least by the residents of the borough, and the finding is corrected by adding this fact. These residents were members of the public.

The trial court concluded that the land was not used for a public purpose within the meaning of the statute referred to, that the borough was the owner of a determinable fee in the premises and that "Mere recitals in a deed that the property is

conveyed for purposes of public use are not sufficient to exempt the property from taxation under the statute where the use, having regard to the location of the property and the general public purposes for which it could be normally used, is so restricted or so inadequately laid out that the public cannot, in fact, enjoy it or would not be expected to make any use of it."

The antecedents of another section of this tax exemption statute were reviewed in *Masonic Building Assn.* v. *Stamford,* 119 Conn. 53, 57, 174 A. 301. See also *Yale University* v. *New Haven,* 71 Conn. 316, 42 A. 87. Public Acts, 1927, Chap. 319, made a radical change. This added to the general exemption of municipal property, in force for many years, the qualification that to be exempt such property must be used for a public purpose. It is a principle of statutory construction that, if possible, no clause, sentence or word shall be superfluous, void or insignificant. *St. John* v. *U. Piccolo & Co., Inc.,* 128 Conn. 608, 613, 25 A.2d 54. Since 1927, public property has not been exempt unless used for a public purpose, and that qualification applies to the property here in question. The application of the provisions of these acts to variant situations has been productive of much litigation. Without reviewing the cases at this time, one of the distinctions that can be made is between cases involving property owned by the state or municipal corporations and property owned by private corporations which is claimed to be devoted to public or charitable use. Most of the cases fall in the latter class. Where the property in question is owned by a municipal corporation, "the non-taxation of public buildings is not the exception but the rule. . . . The seats of government, State or municipal, high-

ways, parks, churches, public school-houses, colleges, have never been within the range of taxation. . . ." *Yale University* v. *New Haven,* supra, 329, 330; *New London* v. *Perkins,* 87 Conn. 229, 233, 87 A. 724; Tiedeman, Municipal Corporations, § 271.

There is no question as to the right of the borough to accept land for park purposes and to regulate its use. 13 Spec. Laws 231, § 1; General Statutes, §§ 390, 475, 476. The fact that the borough is a political and territorial subdivision of the defendant does not disentitle it to claim exemption. *Sachem's Head Property Owners' Assn.* v. *Guilford,* 112 Conn. 515, 517, 152 A. 877. The dedication of property to public use cum onore is not unusual, and the conditions attached to this gift were not such as to restrict it unduly or invalidate it. *Hemphill* v. *Boston,* 8 Cush. (62 Mass.) 195, 197; *Codman* v. *Crocker,* 203 Mass. 146, 149, 89 N.E. 177; *Avis* v. *Vineland,* 56 N.J.L. 474, 478, 28 A. 1039; *Hughes* v. *Bingham,* 135 N.Y. 347, 352, 32 N.E. 78; *Streuber* v. *Alton,* 319 Ill. 43, 47, 149 N.E. 577; and see *Beth Israel Hospital Assn.* v. *Moses,* 275 N.Y. 209, 221, 9 N.E.2d 838; *Middlebury College* v. *Central Power Corporation,* 101 Vt. 325, 143 A. 384. The last cited case is a compendium of the decisions on this general subject.

A definition of a park, approved in *Epstein* v. *New Haven,* 104 Conn. 283, 284, 132 A. 467, is as follows: "In the common understanding, a park, in this country, is a piece of ground in or near a city or town for ornament and as a place . . . for recreation and amusement, and it is usually laid out in walks, drives and recreation grounds." *South Park Commissioners* v. *Ward & Co.,* 248 Ill. 299, 304, 93 N.E. 910. As such it is primarily for the benefit of the

inhabitants of the municipality in which it exists; *Hannon* v. *Waterbury*, 106 Conn. 13, 16, 136 A. 876; but it is also for the use of the general public. *Hartford* v. *Maslen*, 76 Conn. 599, 611, 57 A. 740; *Winchester* v. *Cox*, 129 Conn. 106, 110, 26 A.2d 592.

Applying these principles to the corrected finding, it is clear that the rather unusual circumstances surrounding the creation and operation of this park led the trial court into error. The golf course and the tennis courts are open to the public, which, as is apparent from the facts found, can also make any use of the balance of the property conveyed not forbidden by the regulations of the duly appointed park board. As has been stated, use by residents of the borough was public use. The fact that some of the remaining land is not at present particularly attractive or useful is not conclusive. *Middlebury College* v. *Central Power Corporation*, supra. The same conditions hold true of a large percentage of the land devoted to parks in this and other states.

The trial court evidently failed to appreciate that, after the land had been deeded to the borough, its use as a park by the residents of the borough was, to that extent, a public use. It is also apparent that this conception entered into the decision. The question whether this use and the claimed use by others were sufficient in amount and of a character to satisfy the requirements of the statute did not receive adequate consideration. All of the circumstances must be taken into account. *Phillips* v. *Stamford*, 81 Conn. 408, 413, 71 A. 361. It follows that the case must be remanded for a new trial for a proper determination of that issue. It would seem that many of the facts litigated could now be stipulated.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.