DEER ISLAND ASSOCIATION *v.* PEARL C. TROLLE

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued March 13—decision released June 10, 1980

*Arthur T. Fattibene,* with whom was *David Snyder,* for the appellant (plaintiff).

*Charles F. Brower,* for the appellee (defendant).

PARSKEY, J. The central issue involved in this appeal is whether a strip of land ten feet wide owned by the plaintiff's predecessor in title was acquired by the defendant by adverse possession. The trial referee resolved this issue in favor of the defendant and the plaintiff has appealed.

"Title to realty held in fee by a state or any of its subdivisions for a public use cannot be acquired by adverse possession. . . . Adverse possession will run against a municipality, however, as to land which is not held for a public use." (Citations omitted.) *Goldman* v. *Quadrato,* 142 Conn. 398, 402–403, 114 A.2d 687 (1955). The plaintiff claims that because the land in dispute was being held for a public use, title by adverse possession could not be acquired. To determine whether the claim of public use is firmly based we turn to the finding filed by the trial referee.

The plaintiff has mounted a broad scale attack on the finding. It faults the court for failing to include eighteen paragraphs of the draft finding which it claims set forth undisputed facts and for finding facts in eighteen paragraphs either without evidence or contrary to the evidence. The plaintiff's challenge does not stand up to careful analysis. Facts will not be added unless they are undisputed

and material. *Cutler* v. *MacDonald,* 174 Conn. 606, 609–10, 392 A.2d 476 (1978). Omissions will not be corrected if the change sought amounts to a request that we accept the appellant's version of the facts. *Edgewood Construction Co.* v. *West Haven Redevelopment Agency,* 170 Conn. 271, 272, 365 A.2d 819 (1976). Nor will corrections be made by adding facts already included in the finding in different language. *Cleveland* v. *Cleveland,* 165 Conn. 95, 96, 328 A.2d 691 (1973). The additions being sought all fall into one or more of the above categories. A single example will suffice. One paragraph of the draft finding categorically states that there always was a twenty foot strip of land between the eastern boundary of the defendant's land and a lot formerly owned by the common owner of both parcels. It is undisputed that there once was a twenty foot strip between these parcels. The question in dispute was whether ten feet of this strip was acquired by the defendant by adverse possession. Facts alleged in a draft finding do not become subject to the categorical imperative on the basis of a selective inclusion of claimed admissions in the appendix to the brief. As for the proposed deletions, because the facts contained in these paragraphs are supported by the evidence printed in the appendix to the appellee's brief; *El Idrissi* v. *El Idrissi,* 173 Conn. 295, 297, 377 A.2d 330 (1977); there is no justification for correction of the finding in this respect.

The plaintiff also challenges two evidentiary rulings. The first, which involves the admissibility of a declaration of Herbert Trolle referable to a conversation between two directors of Deer Island Company and John Alfred Trolle has not been preserved on appeal for failure of the plaintiff to take

an exception to the court's ruling. *El Idrissi* v. *El Idrissi,* supra, 300. The second challenge, which involves the admissibility of tax records, also fails. Such records are admissible on the question of adverse possession. *Merwin* v. *Backer,* 80 Conn. 338, 345, 68 A. 373 (1907).

The finding supports the following facts: The plaintiff was constituted by special act in 1929 as a body politic and corporate and was vested with certain powers including the power to "lay out, construct, accept and own roads and passways within its limits . . . ." 20 Spec. Acts 790, No. 254. Deer Island, which is situated on Bantam Lake in the town of Morris, was originally laid out as a subdivision in 1908 by the W. M. Hurlburt Company (hereinafter Hurlburt). The land in dispute is part of a parcel of land twenty feet in width and approximately 145 feet in length, bounded north and south by a roadway, now Island Trail East, and Bantam Lake, respectively, on the east by Lot No. 92 in the subdivision and on the west by land of the defendants. In 1928, the twenty foot parcel was conveyed by Hurlburt to Deer Island Company, the plaintiff's predecessor in title. The deed, which described the parcel by courses and distances, did not characterize it as a passway. In 1933, by quitclaim deed, Deer Island Company conveyed to the plaintiff all the passways "shown on a certain map of Deer Island located in the Town of Morris made by Frank J. Smyth, Surveyor, dated January 6, 1930, and on file in the Office of the Town Clerk of Morris." This map shows a ten rather than a twenty foot strip, designated as a passway, in the area in question. This map also shows the passway as being bounded on the west by land of Julia

Trolle, successor in title of John Alfred Trolle. The western ten feet of the original twenty foot strip was never deeded to Julia Trolle.

The area in dispute was never monumented, used for any public purpose, or maintained by the plaintiff, nor did it engage in any acts of possession in this area. It was never used by any member of the plaintiff's association in connection with boating, fishing or recreational purposes. It would have been impassable as a fire lane for many years and was impassable at the time of trial because of the existence of three large trees.

The defendant is a successor in title to John Alfred Trolle, who received his conveyance from Hurlburt in 1920. The land, which was described as being located twenty feet westerly from Lot 92, ran sixty feet along the northerly passway, now Island Trail East. Its southerly boundary ran eighty feet in the line of the shore of Bantam Lake. The deed to Trolle did not describe the twenty foot strip adjoining the easterly line as a passway but as "land of the W. M. Hurlburt Company."

In the summer of 1929, Judge Church and Judge Peaslee, then believed by Herbert Trolle to be directors of the Deer Island Company, told John Alfred Trolle that there had been an error made on the other side of the island in laying out the lots and asked if the Trolles would be willing to have the passway reduced to ten feet. Thereafter, two boulders were placed in the vicinity of what Trolle understood to be the passway and a one and one-quarter inch pipe was placed at the lakefront; John Alfred Trolle and his successors in title believed the westernmost boulder and the one and one-quarter inch pipe marked the line between his prop-

erty and the Deer Island Company's property. The use by the defendant and her predecessors in title of the area west of this line for access to boating and swimming, dock storage, boat storage, lawn seeding, and maintenance was open, visible, exclusive, under a claim of right and continuous for forty-six years.

According to the deeds, the southerly line of Lot 92 along the shore of Bantam Lake measures 100 feet. The southerly line of the defendant's property measures eighty feet from the one and one-quarter inch pipe along the shore of Bantam Lake, as called for by the original deed to John Alfred Trolle. Giving Lot 92 its 100 feet and the Trolle land its eighty feet, there remains between the iron pipe and the west line of Lot 92 eleven feet for the ten foot passway.

Although the Deer Island Company received title to a twenty foot strip of land, it conveyed to the plaintiff a ten foot passway. The plaintiff's claim that the ten foot strip designated in the Smyth map was obviously an error is not borne out by the record. It is apparent that in 1929 the Deer Island Company recognized a discrepancy between the lot measurements as shown on the Hurlburt plan and the measurements on the ground. As a result of this discrepancy the Trolle property and the Deer Island Company strip, which were supposed to be adjoining, in fact overlapped. The directors of Deer Island Company, aware of this problem, proposed to "reduce" their strip by ten feet. This proposal was followed by the preparation of the Smyth map, the placing of two boulders at the north end of the passway and the placing of an iron pin on the lake side, which monuments are consistent with a ten foot passway.

As we stated earlier, title by adverse possession cannot be acquired with respect to land held for a public use. To be so held, however, there must be at the very least an implied dedication and acceptance. *A & H Corporation* v. *Bridgeport,* 180 Conn. 435, 439, 430 A.2d 25 (1980). The record is barren of any evidence that the land in dispute was ever dedicated to a public use. Title to the land could, therefore, be acquired by adverse possession. The defendant's exclusive occupancy and use of the land for a variety of purposes between 1933 and 1972 was continuous, under a claim of right, open, visible and without the license or consent of the plaintiff. See *Robinson* v. *Myers,* 156 Conn. 510, 517, 244 A.2d 385 (1968). Thus, the trial referee correctly concluded that the defendant has acquired title to the land in dispute.

There is no error.

In this opinion the other judges concurred.