## AMERICAN TRADING REAL ESTATE PROPERTIES, INC.
### *v.* TOWN OF TRUMBULL
### (13811)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued March 7—decision released May 15, 1990

*Burton S. Yaffie,* with whom, on the brief, was *Peter J. Ottomano,* for the appellant-appellee (defendant).

*Stewart I. Edelstein,* for the appellee-appellant (plaintiff).

PETERS, C. J. This appeal presents two principal questions: (1) the proper construction of the words "for the purpose of a road or passage way" in the granting clause of a deed; and (2) the scope of municipal immunity from claims of adverse possession. The plaintiff, American Trading Real Estate Properties, Inc., brought this action against the defendant, the town of Trumbull, to quiet title to a narrow strip of land in which both parties claim fee simple ownership by separate chains of title. Following a trial to the court, the trial court concluded that the defendant had originally acquired fee title to the parcel, but held that the plaintiff had succeeded to that interest by adverse possession. Both parties appealed to the Appellate Court, and we transferred the case to ourselves pursuant to Practice Book § 4023. We agree with the trial court's ruling on fee simple title but not with its resolution of the plaintiff's adverse possession claim.

The trial court found the following facts. The property at issue in this case is an overgrown and impassable roadway running between Route 111 and Old Mine Park in the town of Trumbull. The roadway was created by grant in 1867, when the defendant's predecessor in title purchased "a certain narrow strip of land for the purpose of a road or passage way . . . being twenty feet in width and about nine hundred & fifty feet in length . . . ." Immediately following this provision,

the 1867 deed reserved to the grantors "the privilege of passing over, crossing and recrossing said tract whenever our convenience or necessity may require."[1] The defendant acquired its interest in the roadway in 1937 as part of a transaction in which it acquired three other parcels of land that now comprise Old Mine Park. In 1985, the plaintiff acquired the property through which the roadway passes.

The trial court further found that the plaintiff's predecessors in title, believing that they owned the roadway, had made extensive use of the property since the 1930s by maintaining a chicken coop, a shed, a drainage ditch and a lawn on it. While there has been public use of Old Mine Park, the public has apparently never used the roadway for access to the park.

Pursuant to General Statutes § 47-31, the plaintiff initiated this action in two counts to clear title to the property. The plaintiff first alleged that the 1867 deed to the defendant's predecessor in interest conveyed only an easement to use the roadway, and that, as a consequence, the title to the fee simple estate remained with the plaintiff's predecessors in title. On that hypothesis, the plaintiff, as the successor in interest

---

[1] The deed, recorded in the Trumbull land records in volume 10, page 445, recited that "[w]e, George M. Hubbell, and George R. Turney and Mary J. Turney, husband and wife . . . received to our full satisfaction of Andrew A. Lane . . . do give, grant, bargain, sell and confirm unto the said Lane, a certain narrow strip of land for the purpose of a road or passage way, commencing at the Monroe Turnpike about Two Hundred and fifty five feet East from a certain Elm stump which constitutes said Hubbell's Western boundary point and running through land of the said Mary J. Turney in a line with a certain apple tree with dead top, till it intersects an old road or cart path a little to the East of a large chesnut tree, from thence following said path till it reaches land now belonging to said Grantee, at a certain pair of bars, said East post being said Eastern boundary point, said tract being twenty feet in width and about nine hundred & fifty feet in length—reserving to ourselves and our heirs and successors the privilege of passing over, crossing and recrossing said tract whenever our convenience or necessity may require."

to the grantors of the easement, claimed that it now held fee simple title to the roadway. In the alternative, the plaintiff alleged that, whatever the defendant's interest in the roadway may once have been, that interest had been extinguished by adverse possession on the part of the plaintiff's predecessors in title.

The trial court determined that the 1867 deed unambiguously conveyed fee simple title to the defendant's predecessor in title, and accordingly concluded that the defendant had succeeded to the full fee title when it acquired the roadway in 1937. With regard to the plaintiff's second count, the trial court ruled that the roadway was not immune from adverse possession, notwithstanding the fact that it was owned by a municipality, because the defendant had failed to prove that the property had actually been used by the public for access to the park. Turning to the underlying merits of the plaintiff's adverse possession claim, the court concluded that, by virtue of open, notorious, and exclusive possession of the roadway over a period in excess of fifteen years, the plaintiff's predecessors in interest had adversely possessed a 389 foot section of the roadway and that, as a consequence, the plaintiff had acquired fee simple title to that portion of the property.

On appeal, the plaintiff contends that the trial court failed to accord adequate significance to the language "for the purpose of a road or passage way" contained in the 1867 deed creating the roadway and thus erroneously interpreted that deed as conveying fee simple title to the roadway. The defendant's appeal challenges the trial court's conclusion that the roadway was not immune from the adverse possession claim because it was not held for public use. The court erred, the defendant contends, by invoking an unduly restrictive definition of public use and by imposing on the defendant the burden of proving public use.

## I

We turn first to the plaintiff's contention that the trial court erred in concluding that the defendant's predecessor in interest held fee simple title to the roadway by virtue of the conveyance in 1867. According to the plaintiff, the language in the deed creating the roadway indicating that the grant was intended "for the purpose of a road or passage way" compels the conclusion that the interest granted was an easement and not fee simple title. That conclusion is further supported, the plaintiff contends, by the circumstances surrounding the transaction in 1867 and by the fact that several discrepancies appear in the description of the roadway in deeds and maps filed in the land records subsequent to 1867. We are not persuaded.[2]

Our discussion of this issue must begin with the case of *Chatham* v. *Brainerd,* 11 Conn. 60 (1835), which, despite its venerable age, is the controlling precedent. In *Chatham* v. *Brainerd,* this court was called upon to interpret the language of a resolution by which a town granted one acre of land "for a burying ground." (Emphasis omitted.) Id., 86. Although the court recognized the possibility that a grantor could limit a conveyance to an easement while retaining fee simple title to the property, the court concluded that the provision "for a burying ground" did not evince an intent to create an easement. Id., 91. Instead, the court held, "[i]t

---

[2] The plaintiff also challenges the trial court's decision on two other grounds. First, it contends that the trial court's interpretation of the 1867 deed is fundamentally flawed because it is based on the erroneous conclusion that the reference to the purpose of the grant was located in the habendum clause of the deed rather than in the granting clause. Second, the plaintiff argues that the testimony of the defendant's expert on the nature of the conveyance was without merit. We do not reach either of these contentions, however, since we conclude that the trial court correctly determined that the language of the deed unambiguously conveyed fee simple title to the roadway.

was the land, which was granted, though the object was designated." Id. The court further emphasized that " 'the word *land,* comprehends any ground, soil or earth whatsoever.' [E. Coke, A Commentary upon Littleton, Book 1, § 1, p. 4 (1703)]." Id. Like the language at issue in *Chatham* v. *Brainerd,* supra, the deed in the present case made specific reference to "a certain narrow strip of *land"* (emphasis added) as the subject of the conveyance, and then went on to state the object of the conveyance without expressing any intention to limit the grant to an easement.[3]

---

[3] In support of its contention that language in the granting clause of a deed specifying the purpose of the conveyance as a "road or passage way" indicates that only an easement was intended, the plaintiff cites several cases decided by the courts of other jurisdictions. See *Carter Oil Co.* v. *Myers,* 105 F.2d 259 (7th Cir. 1939); *Glendora* v. *Faus,* 148 Cal. App. 2d 920, 307 P.2d 976 (1957); *Marshall* v. *Standard Oil Co. of California,* 17 Cal. App. 2d 19, 61 P.2d 520 (1936); *Magnolia Petroleum Co.* v. *West,* 374 Ill. 516, 30 N.E.2d 24 (1940); *Gittings* v. *Hilton,* 77 Ill. App. 3d 911, 396 N.E.2d 843 (1979). While these cases do deal with deeds containing provisions similar to the deed at issue in this case, we note that each of the cases contain significant distinguishing features from the circumstances presented in this appeal. In *Carter Oil Co.* v. *Myers,* supra, 261, the court relied principally upon the title of the instrument as a " 'Dedication of right of way for public road purposes' " for its conclusion that only an easement was intended. In *Magnolia Petroleum Co.* v. *West,* supra, 523–24, the Supreme Court of Illinois found the words " 'to be used for road purpose[s]' " to be ambiguous, and concluded that an easement was intended only after reviewing the circumstances surrounding the conveyance and its subsequent use. In *Gittings* v. *Hilton,* supra, 912–13, the deed at issue created a " 'passway' " *across* the grantor's property, and further provided that the passway interest would revert to the grantor if the grantees failed to maintain a fence. The court in *Glendora* v. *Faus,* supra, 925, noted that the original grant recited that the grant was " 'for railroad purposes *only'* " (emphasis added), and relied on the principle that deeds to railroads are ordinarily to be construed as conveying only an easement. Finally, in *Marshall* v. *Standard Oil Co. of California,* supra, 25, the court emphasized that the grantor had expressly limited the grant " *'exclusively* for street purposes' " (emphasis added), and the city had subsequently adopted a resolution accepting the dedication as a highway. Since we conclude that we are bound by *Chatham* v. *Brainerd,* 11 Conn. 60 (1835), however, we need not consider these cases in any greater detail.

The plaintiff contends, however, that *Chatham* v. *Brainerd*, supra, is distinguishable on two grounds. First, it stresses that the court was construing a town resolution in the *Chatham* case, whereas the document at issue in this case is a deed. This difference is without significance, since the resolution, like the deed in this case, was the source of the grant. Moreover, nothing in the court's opinion in *Chatham* suggests that the lack of the formality of a deed in that case influenced the court's interpretation of the language. Second, the plaintiff places emphasis on the court's statement in *Chatham* that, as a grant for "pious and charitable uses," the conveyance "stand[s] upon very different grounds from that of ordinary conveyances." Id., 87. This argument is grounded on a misreading of the case. The quoted material appears in the court's discussion of the separate issue of whether a grant of real property can be valid when the grantee has not yet come into existence at the time of the grant; id., 87–90; and does not apply to the court's interpretation of the grant.

We find further support for our conclusion that the 1867 deed conveyed fee simple title in the fact that the grantors of the 1867 deed expressly reserved a right to pass over and to cross the roadway. Such a reservation of rights would have been unnecessary if the grantors had retained fee simple title to the roadway, since the right to use the property for purposes not inconsistent with a nonexclusive easement would have remained with the grantors.

The plaintiff nonetheless maintains that the circumstances surrounding the transaction in 1867, as well as the discrepant descriptions of the nature and dimensions of the roadway in certain deeds and maps, belie the conclusion that the defendant's predecessor took fee simple title. According to the plaintiff, the defendant's predecessor only needed access to his property from the Monroe Turnpike, now Route 111, an objec-

tive that an easement could accomplish at less expense than purchase of the fee simple interest, given that a fee conveyance would have cut the grantors' property into two pieces. The plaintiff further points to the fact that five of the deeds in the defendant's chain of title refer to the roadway as "a road twenty five feet and one hundred fifty feet," rather than the twenty by nine hundred fifty foot parcel the defendant claims. In addition, the plaintiff points to several maps prepared after 1867 that either fail to make any mention of the roadway or refer to it as a right of way rather than as a separate parcel of property.

There is no merit to the plaintiff's contention that the circumstances of the parties at the time the roadway was originally created indicate that an easement was intended. Although the surrounding circumstances are admissible in determining the intent of the parties, when interpreting the language of a deed the question is not what the parties may have meant to say, but the meaning of what they actually did say. *Lake Garda Improvement Assn.* v. *Battistoni,* 160 Conn. 503, 512, 280 A.2d 877 (1971); *Dennen* v. *Searle,* 149 Conn. 126, 131, 176 A.2d 561 (1961). Since we have concluded that the 1867 deed clearly expressed an intention to convey a fee simple interest in the roadway, reference to the surrounding circumstances is unnecessary. Moreover, the intent of the parties is a question of fact for the trial court; *F & AK, Inc.* v. *Sleeper,* 161 Conn. 505, 511, 289 A.2d 905 (1971); *Lake Garda Improvement Assn.* v. *Battistoni,* supra, 511; *Christen* v. *Ruppe,* 131 Conn. 149, 152, 38 A.2d 439 (1944); and the trial court could reasonably have found that the plaintiff's allegations concerning the surrounding circumstances were speculative and therefore deserving of little weight.

We are equally unpersuaded by the plaintiff's arguments concerning the alleged deed and map discrepan-

cies. Because the older deeds and maps that make up our land records are often imprecise, we have held that such discrepancies will not defeat a claim when other credible evidence supports it. *Bond* v. *Benning,* 175 Conn. 308, 312, 398 A.2d 1158 (1978). Furthermore, the imprecision in this case arises not in the original grant, but in subsequent documents, and the later deeds bring into question only the dimensions of the roadway and not the central issue of whether the conveyance was of a fee simple interest or an easement. Finally, the maps to which the plaintiff refers were not prepared with the objective of determining the nature of the roadway. We therefore conclude that the trial court correctly found that the defendant's predecessor in title had acquired a fee simple interest in the roadway in 1867 and that the defendant succeeded to that interest in 1937.

## II

In its appeal, the defendant mounts a twofold attack on the trial court's conclusion that the roadway was not held for public use and that, as a consequence, the plaintiff could acquire title to the property by adverse possession. First, the defendant argues that the court adopted an unduly restrictive definition of public use by requiring proof that members of the public had continuously used the roadway for access to the park since its acquisition in 1937. Second, the defendant contends that the trial court erroneously required it to assume the burden of proof on the issue of whether the roadway was held for public use. We agree with both of these contentions.[4]

---

[4] The defendant has also challenged the trial court's ruling refusing to admit into evidence a publication about the history of Old Mine Park as well as the trial court's finding that the conduct of the plaintiff's predecessors in interest amounted to adverse possession. We do not reach these issues, however, since we conclude that the defendant is entitled to judgment in its favor on the ground that it held the roadway for public use and is thus immune from the plaintiff's adverse possession claim.

It is well established that "[t]itle to realty held in fee by a state or any of its subdivisions for a public use cannot be acquired by adverse possession." *Goldman* v. *Quadrato,* 142 Conn. 398, 402–403, 114 A.2d 687 (1955); *Deer Island Assn.* v. *Trolle,* 181 Conn. 201, 202, 435 A.2d 10 (1980); *Meshberg* v. *Bridgeport City Trust Co.,* 180 Conn. 274, 276, 429 A.2d 865 (1980). A public entity may claim immunity from adverse possession, however, only to the extent that the property against which a claim has been asserted is held for public use. *Goldman* v. *Quadrato,* supra, 403. Since we have previously concluded that the defendant, a municipality, acquired fee simple title to the roadway in 1937, the propriety of the trial court's decision allowing the plaintiff to assert its claim of adverse possession rests exclusively on the question of whether the defendant held the property for public use.

Although the trial court did not explicitly define the term public use, the memorandum of decision implicitly reveals that the court held that the defendant could claim immunity from adverse possession only if it could demonstrate actual use of the property as a roadway. The court stressed that "[i]t is not enough for the municipality to *hold* the property for the public use; something more, that is to say, actual public *use,* must be shown." (Emphasis in original.) In reaching its conclusion that "the defendant Town of Trumbull has failed to show the strip was used by the public or dedicated for public use after the property was acquired in 1937," the trial court apparently relied upon the factual showing that the roadway was impassable and had never been used for access to the park. This conclusion would follow only if "actual public use" means "use as a roadway."

In its interpretation of the public use requirement, the court relied, by way of analogy, on cases in which this court has ruled that, in order to establish the exis-

tence of a public highway, a party must prove that there was dedication as a highway on the part of the private landowner and an acceptance by the public authority. *Meder* v. *Milford,* 190 Conn. 72, 74, 458 A.2d 1158 (1983); *Deer Island Assn.* v. *Trolle,* supra, 207; *A & H Corporation* v. *Bridgeport,* 180 Conn. 435, 439, 430 A.2d 25 (1980); *DiCioccio* v. *Wethersfield,* 146 Conn. 474, 479, 152 A.2d 308 (1959). These cases are, however, distinguishable. In contrast to this case, in which the defendant town acquired fee simple title, the public highway cases address the issue of whether a private landowner who has undisputably retained fee simple title to the property at issue has nevertheless manifested an intent to dedicate that property to public use. While some action indicating dedication of the roadway to public use might have provided persuasive evidence that the defendant held it for public use in this case, the lack of such an action by no means precludes a determination that the property was held for public use.

Furthermore, this court's precedents do not support the trial court's interpretation of the public use requirement as necessitating proof of present use of the property as a roadway. As long ago as 1873, this court ruled that a municipality does not forfeit its immunity from adverse possession merely by lack of use of property that is intended for development for public use at some future date. *Derby* v. *Alling,* 40 Conn. 410, 434–35 (1873). In the *Derby* case, the town of Derby brought suit to enjoin a private party from constructing a building on land that had been deeded to the town for the purpose of constructing a public highway. Id., 431. The party occupying the land defended on the ground that the town had lost its rights to the property by nonuser and abandonment and thus could not claim immunity from adverse possession. Although the court did suggest that a municipality might lose its rights to property by failing to assert those rights for a sufficiently

lengthy period of time, the fact that the court remanded the case for further findings indicates that something beyond mere nonuser was contemplated. This court later clarified the circumstances under which a municipality might forfeit its rights to property in *Appeal of Phillips,* 113 Conn. 40, 45, 154 A. 238 (1931). In that case, the court ruled that, while nonuser may provide evidence of abandonment, the public rights to that property will not be forfeited by lack of use absent some additional evidence indicating that the municipality intended to abandon the property. Id.; see also *Pizzuto* v. *Newington,* 174 Conn. 282, 285, 386 A.2d 238 (1978).

More recently, in *Goldman* v. *Quadrato,* supra, this court concluded that a parcel of land owned by the city of Waterbury was not held for public use, and was thus capable of being adversely possessed. In reaching this conclusion, however, the court relied in large part on the fact that "the public were given no beneficial rights, to be enjoyed presently *or in the future.*" (Emphasis added.) Id., 403. The court's explicit reference to the possibility of future public uses suggests that the public use requirement can be satisfied even if a property is not presently subject to public use so long as it is held with an intention to develop it at some time in the future. Such a construction of the public use requirement is consistent with our earlier holding, in *Fenwick* v. *Old Saybrook,* 133 Conn. 22, 24, 47 A.2d 849 (1946), that the borough of Fenwick could claim a municipal tax exemption for land "used for a public purpose"; see General Statutes § 12-81 (4); despite "[t]he fact that some of the remaining land is not at present particularly attractive or useful  . . . ." *Fenwick* v. *Old Saybrook,* supra, 30.

The central message of this line of cases is that land is indeed held for public use even when a municipality is not presently making use of the land but is simply holding it for development at some later time. Absent

some evidence of municipal intention to abandon its plans for future development of the municipal property, the land is immune from claims of adverse possession.

The trial court's narrow definition of the term public use suffers from the additional weakness that it excludes the possibility of uses that may be highly beneficial to the public but that do not involve the type of physical intrusion on the land that the "actual public use" standard appears to contemplate. A municipality might, for example, elect to buffer a park from encroaching development by maintaining undeveloped property adjacent to the park. Similarly, a municipality might attempt to preserve the character of the community by acquiring "open space" land or "greenbelts" or might seek to protect wildlife or inland wetlands by purchasing land to be left in an undisturbed state. A standard of public use that fails to include such uses would do a great disservice to these commendable efforts to protect the environment.

In light of the myriad of public uses that may be advanced through public ownership of undeveloped lands, we also hold that property that is held in fee simple ownership by municipalities must be presumed to be held for public use. It follows that the party seeking title by adverse possession must bear the burden of rebutting that presumption. Municipal immunity from adverse possession is the rule and not the exception, and we have consistently held that the party seeking to acquire title by adverse possession bears the burden of proving all the elements of adverse possession. *Roche* v. *Fairfield,* 186 Conn. 490, 498, 442 A.2d 911 (1982); *Loewenberg* v. *Wallace,* 147 Conn. 689, 699, 166 A.2d 150 (1960). Moreover, the rationale underlying the immunity of municipalities from adverse possession, that the public should not lose its rights to property as a result of the inattention of a governmental entity; see G. Thompson, Real Property (1979)

§ 2556, p. 694; applies with even greater force to situations involving undeveloped lands, which may, by their nature, garner even less attention from local governments suffering from the constraints of scarce fiscal resources.

Lastly, it remains to be considered whether, on the present record, the defendant can be said to have held the roadway for public use under the definition of public use that we deem appropriate. The trial court relied principally upon *Goldman* v. *Quadrato,* supra, for its conclusion that the defendant had not held the roadway for public use because the land was, in effect, " 'legally fallow.' " *Goldman* v. *Quadrato* is inapposite on its facts, however, because the circumstances surrounding Waterbury's acquisition and subsequent use of the property were vastly different from the circumstances presented in this case. In *Goldman,* the property was a lot in a residential subdivision, and the city's acquisition of the property by foreclosure on a tax lien was intended only to protect the city's fisc from a delinquent taxpayer. That Waterbury had manifested no intention to develop the property, then or later, for any public purpose whatsoever, was clearly demonstrated by the fact that the city subsequently sold the property to a private party. Id., 400. In the present case, by contrast, it is undisputed that the defendant purchased the roadway in conjunction with three other contiguous parcels used to form a public park. Indeed, the roadway was conveyed in the same instrument as the other three parcels. Although the trial court found that the roadway had never been used for any purpose related to the park, the court did not discredit the defendant's assertion that the town might develop the roadway for access to Old Mine Park at some point in the future.

Since the plaintiff has presented no evidence indicating that the defendant holds the property for some non-

public use or has abandoned its intention to hold the roadway for public purposes, we conclude that the plaintiff has failed to rebut the presumption that the defendant holds the roadway for public use. Accordingly, we hold that the defendant is immune from the plaintiff's claim of adverse possession.

With respect to the appeal, the judgment is reversed and the case is remanded with direction to render judgment for the defendant in accordance with this opinion; with respect to the cross appeal, the judgment is affirmed.

In this opinion the other justices concurred.