[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action brought by the plaintiff, Timothy R. E. Keeney, Commissioner of Environmental Protection (Commissioner) against the defendants L S Construction (L S), Cathy Morsey, Lee B. Morsey and Steven Hinckly (collectively referred to as the defendants). Also sued were Neuzat and Agman Murtishi, Leonard Ballwig, and Michael Cherniske. These latter four defendants have previously stipulated with the plaintiff for judgment, which has been entered, and are not the subject of this memorandum.
Lee and Cathy Morsey, as well as Steven Hinckly, are either owners (partners) or agents of L S Construction (a partnership) and any acts of L S are equally attributable to these individuals. Gen. Stat. 34-51.
The counts against the defendants allege three separate statutory violations which occurred at each of five different locations, namely New Milford, Newtown, Torrington, Sherman and New Preston.
1. The defendants disposed of solid waste without a permit, i.e. they "established a solid waste facility without a permit," in violation of General Statutes 22a-208a. A solid waste facility is defined as a disposal area or more than ten cubic yards of solid waste, which, in turn, is defined as including construction debris. General Statutes 22a-207(e) and 22a-207(4).
2. The defendants discharged leachate into the waters of the State without a permit in violation of General Statutes22a-430. Discharge is defined as prohibiting emission of water or material whether or not it causes pollution. General Statutes 22a-423.
3. The defendants' actions have or are reasonably likely to unreasonably pollute, impair or destroy the public trust in water and wetlands of the State in violation of General Statutes22a-14, et seq.
The court will discuss the application of these three distinct alleged statutory violations to the five separate site locations at which the defendants are charged with those violations.
The plaintiff seeks affirmative injunctive relief as well as statutory penalties against the defendants. These requests will be discussed and appropriate orders made at the conclusion of this memorandum.
From the more credible and probative evidence adduced at CT Page 958 trial, the court makes the following findings of fact.
I. The New Milford Site — Counts 1-4
The defendants are owners and in control of several acres of land known as 322 Kent Road in New Milford. The land is used as a base for the construction activities of L S Construction.
Sometime during the years of 1990 (at least as early as March) and 1991, the defendants deposited construction debris on this property. The plaintiff has produced overwhelming evidence that the defendants subsequently buried several thousand cubic yards of this material on the property. Incredibly, total accumulation on this property exceeded 51,000 cubic yards of material. A video tape of the uncovering of this waste was graphically demonstrated to the court. Some of the material was found perilously close to the Housatonic River which abuts the property.
Despite the defendants' categoric denial of these charges, the court is convinced beyond any doubt that the defendants buried the material in total defiance of our environmental and hazardous waste laws.
Further ample evidence was presented as to the potential damage to subsurface water and to the contiguous river. The court finds the allegations of these counts to have been proven by the plaintiff.
II. The Newtown Property — Counts 5-8
In May of 1990 the defendants made an arrangement with Leonard Ballwig to deposit fill on his lot located at 44 Black Bridge Road in Newton. Instead of depositing clean fill, the defendants deposited approximately 700 cubic yards of construction debris on the site. Much of the debris was fifty to seventy-five feet from a well which serviced the Ballwig home.
The leachate from this hazardous waste will pollute the ground and endanger persons using water from the area.
The material dumped still remains on the Ballwig property.
The court finds the allegations of these counts to be proven.
III. The Torrington Property — Counts 12-15
The defendants were hired by the developers of a 23 lot CT Page 959 subdivision located on Saw Mill Road in Torrington to construct a road on the property. In December of 1990, during the course of construction of the road, the defendants dumped approximately eighteen hundred cubic yards of construction debris on the property. This hazardous waste also constituted a danger to the local water supply and the environment.
The developers of the property were forced to remove the construction debris at a cost to them of approximately $78,000.
The court finds the allegations of these counts to have been proven by the plaintiff.
IV. The Sherman Property — Counts 16-19
In the Spring of 1990, Nevzot and Agman Murtishi, owners of a parcel of land on Route 55 in Sherman, hired the defendants to dig a foundation hole and subsequently to build an access road on their property.
Here again the defendants, instead of using clean fill, dumped construction debris on the property. The hazardous waste constituted three to four hundred cubic yards of material and has never been removed. The material constitutes a danger to the water in the area and also to the environment.
V. The New Preston Property — Counts 23-26
Around March of 1990, the defendants, with the permission of Michael Cherniske, dumped approximately two hundred cubic yards of material on Cherniske's land in New Preston.
Unbeknown to Cherniske, however, this material was hazardous waste consisting of construction debris. It constituted a danger to the water supply and to the environment.
Additionally, the property was in or near wetlands as defined in General Statutes 22a-29(2) and the hazardous waste was likely to impair or pollute the wetlands. It has not yet been removed.
The court therefore concludes that as to the five sites discussed above, the defendants have violated the provisions of General Statutes 22a-208a, disposal of solid waste without a permit 22a-40, discharge of leachate into waters of the State without a permit and 22a-14 et seq., polluting, impairing or destroying the public trust in the water or wetlands of the State.
INJUNCTION CT Page 960
The three separate allegations of wrongdoing (as to each site) seek enforcement of environmental statutes. Each of these statutes (General Statutes 22a-226, 22a-430, and 22a-16-22a-18) empower the court to issue injunctive relief for violation of the environment laws.
Unlike traditional claims for an injunction where irreparable harm and an inadequate remedy of law must be demonstrated, requests by a governmental agency for injunctive relief to enforce a statute need only prove a violation of the statute. Conservation Commission v. Price, 193 Conn. 414
(1984) Theurkouf v. Miller, 153 Conn. 159 (1965).
Inasmuch as this memorandum of decision has clearly chronicled major misconduct by the defendants, injunctive relief is warranted and is ordered as specified below.
PENALTIES
The provisions of General Statutes 22a-226 authorize a civil penalty not to exceed $25,000 per day for violation of "any provision of [solid waste] chapter or any regulation, permit or order adopted or issued under this chapter . . ."
The provisions of General Statutes 22a-438(a) authorize a civil penalty not to exceed $25,000 per day for each violation of any provision of the water pollution chapter. These provisions authorize a civil penalty against the defendants for all conduct pleaded under the water pollution laws.
In Carothers v. Capozziello, 215 Conn. 81, 105 (1990), the court set fourth the factors to be considered in levying such a civil penalty.
 These factors include but are not limited to; (1) the size of the business involved; (2) the effect of the penalty or injunctive relief on its ability to continue operation; (3) the gravity of the violation; (4) the good faith efforts made by the business to comply with applicable statutory requirements; (5) any economic benefit gained by the violations; (6) deterrence of future violations; and (7) the fair and equitable treatment of the regulated community. [Citations omitted].
Moreover, the provisions of General Statutes 22a-438, as amended by P.A. 90-222, set forth certain factors to be considered in determining the amount of civil penalties in water pollution cases. These factors are the "nature, circumstances, CT Page 961 extent and gravity of the violation, the person or municipality's prior history of violations, the economic benefit resulting to the person or municipality from the violation, and such other factors deemed appropriate by the court."
Although the court has very little evidence before it concerning the size of the defendant's business, or the effect of any penalty on its ability to continue, it is obvious to the court that the defendants' business was very active and involved at least six large trucks and additional equipment. The company grossed at least $269,000 in the first six months of this year.
The Commissioner claims this case involves the largest amount of dumping of hazardous waste in the State's history. Be that as it may, what is obvious to the court is that the violations involved are severe and extremely serious. Not only did the defendants dump toxic demolition debris near water supplies at the various sites but also dumped it next to the Housatonic River in New Milford in huge quantities. The 51,000 cubic yards of waste at that site were buried over a 2 acre area up to 18 feet deep. They totally dumped over the five sites in excess of 58,000 cubic yards of waste. Of further significance is that much of this dumping occurred after the defendants were told by the authorities that they were violating the law. It is this court's opinion that the defendants knowingly, flagrantly and persistently violated our environmental laws by continuing to dump hazardous waste when they knew they were violating these laws. At trial, the defendants continued to maintain their innocence as to the allegations contained in the complaint, despite overwhelming evidence to the contrary.
It is also obvious that the defendants profited considerably from their violations. Lawful disposition of demolition debris runs at a cost of about $18 per cubic yard. At this rate, the defendants' illegal dumping resulted in a saving to them in excess of $1,000,000.
The evidence also showed that they were paid (at least by one customer from New York) $8 per cubic yard to take the material. Obviously the defendants profited from their illegal conduct.
The defendants offered no evidence as to their inability to pay any fine except Cathy Morsey's bald assertion that the company had contacted a bankruptcy attorney because of its financial problems.
Admittedly, the company (partnership) owns the land and buildings in New Milford, several trucks and construction equipment. CT Page 962
In levying the fine, the court has also considered the effect on future violations by these defendants.
JUDGMENT AND ORDER
I. ORDER UPON REQUEST FOR PERMANENT INJUNCTION
Upon hearing the plaintiff's request for permanent injunction, the court grants the plaintiff's request and hereby permanently enjoins the defendants L S Construction, Cathy Morsey, Lee B. Morsey and Steven Hinckley to do the following.
1. The defendants L S Construction, Cathy Morsey, Lee B. Morsey and Steven Hinckley (hereinafter "the defendants") are enjoined, jointly and severally, from depositing any solid waste at any location anywhere within the State of Connecticut, unless the Commissioner of Environmental Protection has issued a permit to operate a solid waste facility at such location.
2. The defendants shall remove all solid waste from the Newton site, the Sherman site, and the New Preston site in the following manner and pursuant to the following schedule:
 a. Removal must commence no later than ten days following the entry of this order, and shall continue at a rate of no less than 2,000 cubic yards being removed from any of the herein stated sites every calendar week, and removal of all solid waste from each of the herein stated sites must be completed within the time specified in this Order.
 b. Removal of all the solid waste from the Newton site shall be completed within seven (7) days of the entry of this Order.
 c. Removal of all the solid waste from the Sherman site shall be completed within thirty (30) days of the date of this Order.
 d. Removal of all the solid waste from the New Preston site shall be completed within forty-five (45) days of the date of this Order.
3. Within thirty (30) days of the entry of this Order, the defendants shall submit for the plaintiff's review and approval a plan for the removal of all solid waste at the New Milford site. Such plan shall include at least a plan and schedule for determining the amount of solid waste at the site; a plan and schedule for testing the solid waste at the site to determine if CT Page 963 it contains hazardous materials, or asbestos, report describing the amount of solid waste at the New Milford site; a plan for erosion and dust control, the manner in which waste will be removed a schedule for waste removal, and a plan for restoring excavated areas. Such plan shall provide for the removal of solid wastes from the New Milford site at a rate of no less than 2,000 cubic yards per week.
4. The defendant shall remove all solid wastes from the New Milford site in accordance with the schedule approved pursuant to paragraph 3.
5. No later than forty-eight (48) hours before the completion of removal of solid waste at any of the herein stated sites the defendants must notify the plaintiff of the estimated time of completion of removal of all solid waste at such site. Upon a request by the plaintiff, his agents or employees, and within twenty-four (24) hours of such a request, the defendants must verify by digging test pits at the direction of the plaintiff that all solid waste has been removed from the site.
6. The defendants shall visually inspect all solid waste being removed from the sites that are the subject of this Order. If any materials other than clean fill, demolition debris, and tires are present, the defendants must immediately contain any such material in a manner to prevent harm or risk to the environment or health and consistent with environmental law. Within twenty-four (24) hours of the discovery of such material, the defendants shall cause such material to be sampled in accordance with accepted scientific practice to determine if such material is hazardous waste or asbestos. If such material is hazardous or asbestos, the defendants shall submit a plan, within four (4) days of mailing of sample results from a laboratory to the defendant, to the plaintiff for review and approval for removal of such hazardous waste or asbestos. The defendants shall remove the hazardous waste or asbestos in accordance with the approved plan.
7. The defendants shall keep a log of waste removal activities at the site including the following information for each truckload of waste removed; (1) the date; (2) the license plate registration number for the truck, or for the tractor and for the trailer if tractor trailer combinations are used; (3) the time the empty truck arrived at the site; (4) the time the loaded truck left the site; (5) the time the loaded truck arrived at the disposal site; (6) the time the empty truck left the disposal site; and (7) the number on the prepaid dump ticket or prepaid invoice for disposal of the loads disposed of. The defendant shall also acquire receipts from the facility at which solid waste is disposed. No later than 4:00 P.M. on each CT Page 964 Tuesday defendants shall submit to the plaintiff all entries for this log for waste removed during the preceding calendar week, and all facility receipts until such time that all waste has been removed from the site. Upon written or oral request of any representative of the plaintiff, the defendants shall make the log immediately available if the request is made between 9:00 P.M. and 5:00 P.M. on a business day, and reasonably available if the request is made during other times, but no later than 9:00 A.M. on the next business day.
8. All solid waste removed from the sites may only be removed to and disposed of at a facility authorized by the law of the state in which the facility is located to receive solid waste. If disposal takes place within the State of Connecticut, this means a facility possessing a permit from the Commissioner of Environmental Protection to operate a solid waste facility. No waste shall be removed from the site unless at least three (3) business days prior to the removal, defendants have notified and received approval from the plaintiff in writing of the specific date on which removal is to take place, the specific quantity of solid waste to be removed on that date, and the facilities at which any wastes are to be disposed of.
9. All sampling and analysis which is required by this Order and all reporting of such sampling and analysis shall be done by a laboratory certified by the U.S. Environmental Protection Agency or Connecticut Department of Health Services for such analysis in accordance with accepted scientific practice and the value of each parameter shall be reported to the maximum level of precision and accuracy possible.
10. All results of samples which are taken pursuant to the terms of this Order must be delivered to the plaintiff within seventy-two (72) hours of the laboratories' completion of such sample results.
11. The defendants shall use best efforts to submit to the plaintiff all documents required by this Order in a complete and approvable form. If the plaintiff notified the defendants that any document or other action is deficient, and does not approve it with conditions or modifications, it is deemed disapproved, and defendants shall correct the deficiencies and resubmit it within the time specified by the plaintiff or, if no time is specified by the plaintiff, within fifteen (15) days of the plaintiff's notice of deficiencies. In approving any document or other action under this Order the plaintiff may approve the document or other action as submitted or performed or with such conditions or modifications as he deems necessary to carry out the purpose of this Order. Nothing in this paragraph shall excuse noncompliance or delay. CT Page 965
12. The date of submission to the plaintiff of any document required by this Order shall be the date such document is received by the plaintiff. The date of any notice by the plaintiff under this Order, including but not limited to notice of approval or disapproval of any document or other action, shall be the date such notice is personally delivered or the date three (3) days after it is mailed by the plaintiff, whichever is earlier. Except as otherwise specified in this Order the word "day" as used in this Order means calendar day. Any document or action which is required by this Order to be submitted or performed by a date which falls on a Saturday, Sunday or legal holiday shall be submitted or performed by the next business day thereafter.
13. Any document including but not limited to any notice, which is required to be submitted to the plaintiff under this Order shall be signed by the defendants or a duly authorized representative of such person, as those terms are defined in section 22a-430-3(b)(2)(B) of the Regulations of Connecticut State Agencies and by the individual or individuals responsible for actually preparing such document each of whom shall certify in writing as follows: "I have personally examined and am familiar with the information submitted in this document and all attachments and certify that based on reasonable investigation, including my inquiry of those individuals immediately responsible for obtaining the information, the submitted information is true, accurate and complete to the best of my knowledge and belief, and I understand that any false statement made in this document or its attachments may be punishable as a criminal offense."
14. Any document required to be submitted to the plaintiff under this Order shall, unless otherwise specified in writing by the plaintiff be directed to:
 Mr. Thomas Pregman Department of Environmental Protection Waste Management Bureau 18-20 Trinity Street Hartford, CT 06106
15. Any representative of the plaintiff may enter of the subject sites without prior notice for purposes of monitoring and enforcing the actions required by this Order.
16. The defendants shall be jointly and severally liable for compliance with this Order.
17. The injunctive provisions of this Judgment are entered CT Page 966 under penalty of $300 per day per violation for each site for the first thirty (30) days of violation, $400 per day for the second thirty (30) days of violation, and $500 per day for each day of violation thereafter. In the event that any of the provisions of this Judgment are violated, the court may finalize a penalty in this amount and take any other action authorized under the contempt power in order to coerce compliance with the Judgment including the incarceration of any noncomplying defendant or defendants.
18. Nothing in this Order shall affect the plaintiff's authority to institute any proceeding to prevent or abate violations of law, prevent or abate pollution, recover costs and natural resource damages, and to impose penalities for violations of law, including but not limited to violations of any permit issued by the plaintiff. If at any time the plaintiff determines that remedial actions taken by the defendants pursuant to this Order have not successfully abated or prevented pollution, the plaintiff may institute any proceeding to require the defendants to prevent or abate pollution.
19. The defendants shall, prior to entry upon the landowner defendants' properties, make reasonable efforts to obtain contractor's operations, public liability, and motor vehicle liability insurance coverage in an amount not less than one million dollars combined single limit, worker's compensation insurance as required by Connecticut Law, and shall maintain such insurance coverages at all times work or testing is to be performed pursuant to this Order.
20. The L S defendants hereby waive any and all mechanic's lien rights which they may as a result of performing such work on the landowner defendants' properties and shall secure such waivers from any and all agent and contractors performing any such work. In the event a mechanic's lien or attachment is lodged against the properties as a result of such work, the L S defendants shall undertake the defense, discharge or bonding of the same pursuant to the above indemnification.
21. The defendants their agents and contractors, shall provide the landowner defendants with reasonable prior notice of the nature, location and schedule of tests and/or remedial work to be conducted on the landowners' properties. Such access, testing and work shall be conducted during regular business hours in a manner which does not impair the landowners' use and enjoyment of those areas of their properties outside the testing and/or work area. CT Page 967
22. Within ninety (90) days for the date of this Order, the defendants shall submit to the plaintiff for review and written approval a plan for sampling the groundwater at 322 Kent Road in New Milford, CT., at 44 Black Bridge Road in Newton Ct., property of Leonard F. Ballwig (hereinafter "the Newton site"), Route 55, Sherman, CT. property of Nevzat and Agnam Murtishi (hereinafter "the Sherman site"), and Gunn Hill Road in new Preston, Ct., property of Michael Cherniske (hereinafter "the New Preston site"). Such plan shall include at least the proposed location and depth of at least 3 ground water monitor wells at each site; a procedure for sampling residential wells at each site; a proposed analytical and sampling program, including at least parameters to be tested, proposed sampling and analytical methods, and quality assurance, and quality control procedures, and a schedule for conducting the approved plan. The schedule shall provide for the completion of the installation of monitoring wells no later than thirty (30) days after the approval of such plan by the plaintiff. The approved sampling program shall be conducted at each site beginning in accordance with the approved plan and continuing for at least one year following the removal of solid waste from each site specified in this paragraph which wastes are removed pursuant to this Order.
23. The defendant shall perform the sampling plan approved pursuant to paragraph 22 in accordance with the approved schedule. The defendants shall notify the plaintiff in writing of the date and time of installation of monitoring wells of each water sampling event at least five (5) full business days prior to such installation or sampling.
24. If the plaintiff determines that the ground water at any of the locations identified in paragraph 22 is polluted or contaminated by the disposal of solid waste at any location identified in paragraph 22, the plaintiff shall notify the defendants in writing of such determination. Within thirty (30) days of such notification, the defendants shall submit to the plaintiff for review and written approval a scope of study for an investigation of the extent and degree of contamination of the ground water and surface water both at the site which is the subject of such notification, and emanating from such site. Such scope of study shall include at least the proposed location and depths of ground water monitor wells, and soil and surface water sampling, a proposed analytical and sampling program, including at least parameters to be tested, proposed sampling and analytical methods, and quality assurance and quality control procedures, and a schedule for conducting the investigation. The schedule shall provide for the completion of the installation of monitoring wells no later than 15 days after the approval of such plan by the plaintiff. CT Page 968
25. If the investigation carried out under a scope or study does not fully characterize the extent and degree of surface water and ground water pollution or contamination to the satisfaction of the plaintiff, additional investigation shall be performed in accordance with a supplemental plan and schedule approved in writing by the plaintiff. Unless otherwise specified in writing by the plaintiff, the supplemental plan and schedule shall be submitted to the plaintiff for review and approval on or before 30 days after notice from the plaintiff that they are required.
26. The defendants shall perform the investigation and other actions specified in the scope of study approved pursuant to paragraph 24 and in any approved supplemental plan(s) in accordance with the approved schedule(s). Defendants shall notify the plaintiff in writing of the date and time of installation of monitoring wells and of each soil and water sampling event at least five full business days prior to such installation or sampling.
27. Except as may be provided in the investigation schedule approved by the plaintiff approved pursuant to paragraph 24 on or before thirty (30) days after the approved date for completion of the investigating, defendants shall submit to the plaintiff for review and written approval a comprehensive and thorough report which describes in detail the investigation performed; defines the existing and potential extent and degree of soil, surface water and ground water pollution which is on, is emanating from or has emanated from the site, and evaluates the alternatives for remedial actions to abate such pollution, proposes a preferred alternative with supporting justification therefor, and proposes a detailed program and schedule to perform the preferred remedial actions. Such report shall also include but not be limited to a soil, surface water and ground water monitoring program to determine the degree to which the approved actions have been effective, and a schedule for performing the approved monitoring program.
28. Unless another deadline is specified in writing by the plaintiff, on or before sixty (60) days after approval of the report described in paragraph 27, defendants shall submit to the plaintiff for review and written approval contract plans and specifications for the approved remedial actions and shall submit applications for all permits required for such actions. Defendants shall use best efforts to obtain all required permits.
29. The defendants shall perform the approved remedial actions in accordance with the approved schedule(s), and, within CT Page 969 fifteen (15) days of completing such actions, small certify to the plaintiff in writing that the actions have been completed as approved.
30. The defendants shall perform the monitoring program approved pursuant to paragraph 27 to determine the effectiveness of its remedial actions in accordance with the approved schedule(s). If the approved remedial actions do not result in the prevention and abatement of soil, surface water and ground water pollution to the satisfaction of the plaintiff, additional remedial actions and measures for monitoring the effectiveness of those actions shall be performed in accordance with the supplemental plan and schedule approved by the plaintiff. Unless otherwise specified in writing by the plaintiff for review and written approval on or before thirty (30) days after notice from the plaintiff to the defendants that they are required.
31. On a schedule established by the plaintiff or, if no such schedule is established, on a quarterly basis beginning no later than ninety (90) days after initiation of the approved remedial actions or, as applicable, supplemental remedial actions, the defendant shall submit to the plaintiff for review and written approval a report describing the results to date of the monitoring program to determine the effectiveness of the remedial actions.
32. Any portions of this Order requiring approval by the plaintiff shall be deemed as requiring approval which shall not be unreasonably withheld. The court shall resolve any conflict between the parties concerning any impasse over the determination of whether or not approval is being unreasonably withheld.
33. The defendants are further enjoined from transferring or encumbering any of their assets real or personal, which they may own as a partnership, individually or jointly with others, until further order of this court.
34. The court shall retain jurisdiction in order to monitor compliance with this Judgment. Additional hearing may be scheduled by the court, at the request of any party, with notice being provided to all parties. At any such hearing, this court shall consider whether or not the injunctive provisions of the Judgment have been complied with, whether or not any further orders are necessary to remediate the problems addressed at the site, and if any provision of this Judgment has not been complied with, whether or not to hold the offending party in contempt and sanction the offending party. CT Page 970
35. Nothing in this Order shall relieve the defendants of any obligations under applicable federal, state and local law.
II. PENALTY
The penalty assessed against the defendants, jointly and severally is delineated as follows:
 New Milford Site Solid Waste $200 per day x approximately 648 days, (3/90* — 12/91) 129,600 Water $200 per day x 649 days (3/90* — 12/91) 129,600 *Except 2/4/91 — 2/16/91 and 4/23/91 — 4/30/91 Sherman Site Solid Waste $200 per day x approximately 639 days (4/90 — 12/91) 127,800 Water $200 per day x approximately 639 days (4//90 — 12/91) 127,800 New Preston Site Solid Waste $200 per day x approximately 639 days (4/90* — 12/91) 127,200 Water $200 per day x approximately 636 days (4/90* — 12/91) 127,200 *Except 4/18, 4/19, 4/20/90 Newton Site Solid Waste $200 per day x approximately 606 days (5/90* — 12/91) 121,200 Water $200 per day x approximately 606 days (5/90* — 12/91) 121,200 *Except 5/5, 5/7, 5/8 and 5/9/90 Torrington Site Solid Waste $200 per day x approximately 89 days (1/91 to 4/91 17,800 Water $200 per day x approximately 89 days (1/91 to 4/91) 17,800
CT Page 971
TOTAL AMOUNT OF FINE $1,032,800
Judgment may enter accordingly.
FREED, J.