[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action concerns what is known as "Mill Lane" which runs off Cherry Brook Road in Canton, Connecticut. The plaintiffs are brothers. Both live out of State. They are the sons of the late Wilson S. Kistler. Wilson S. Kistler acquired the property known as 126 Cherry Brook Road in 1948. He died in 1987. Plaintiffs then inherited 126 Cherry Brook Road. Exhibit 24.
CT Page 10541 In this action, plaintiffs' prayer for relief says:
"WHEREFORE, the plaintiffs claim:
 "1. A judgment determining the rights of the parties in or to Mill Lane and settling the rights thereto.
 "2. A injunction restraining the defendant, Douglas Gnazzo, from continuing to cross, obstruct, stop or interfere with the plaintiffs' use and right of way known as Mill Lane and from in any manner interfering with or attempting to prevent the plaintiffs or their agents from passing or using the right of way known as Mill Lane." Second Amended Complaint, October 23, 1991, p. 5.
Douglas Gnazzo acquired what is known as 130 Cherry Brook Road in 1981. It is located north of the plaintiffs' property.
The question in this lawsuit is the status of Mill Lane. Does it lie between, on both, or on one or the other, of the named parties' property?
The Town of Canton is a party. It has taken a passive stance in this action.[1]
Plaintiffs claim they have the right to use Mill Lane under a variety of theories, i.e., its a public highway, if it was abandoned as a public highway they have title to the middle of it or have a statutory easement of access (C.G.S. 13a-55), a right of way by implication, and/or a prescriptive right because of open, visible, continuous, uninterrupted use under a claim of right for more than 15 years. Second Amended Complaint, 11 [124].
Defendant Gnazzo's primary defense is that by deed he owns Mill Lane in fee simple absolute. He denies Mill Lane was or is a public highway. If it ever was a public highway, it has been abandoned. He also claims he owns Mill Lane in fee simple by adverse possession. Answer and Special Defenses of the Defendant Douglas Gnazzo, March 16, 1992. [128]
Mill Lane begins (or ends) at Cherry Brook Road. It then runs approximately 413+ feet in a westerly[2] direction. It then curves southwesterly over or through the Kistlers" property where it ends (or begins) near the ruins of a grist mill. Exhibit A. CT Page 10542 The part of Mill Lane which is in dispute here is the 413+ foot portion that lies immediately north of the Kistler property line as shown on both Plaintiffs' Exhibit A and Defendant's Exhibit 36.
Plaintiffs do not claim a deeded fee interest in Mill Lane. They could not. The deed to their father clearly states the northerly boundary to be Mill Lane. See Andrus-to-Kistler deed dated November 2, 1948. Exhibit 20. Plaintiffs do claim an interest in Mill Lane by adverse user. There was credible evidence that their father and other predecessors in title used Mill Lane to access the rear of the property. The door of the barn on the Kistler property faces Mill Lane thus indicating that Mill Lane was the means of access to the barn. However, it is doubtful the evidence was sufficient to show an adverse user. Nor can the court find the property benefits from a right of way by implication. Mill Lane was conveyed before the Kistler parcel was conveyed. To the extent the plaintiffs claim by necessity, they fail because the property always has had frontage on what is now known as Cherry Brook Road.
The court concludes that plaintiffs' rights, if any, in Mill Lane depend on Mill Lane's having been, or being, a public highway.
Douglas Gnazzo, Jr., acquired 130 Cherry Brook Road in 1981. Exhibit 35. Gnazzo acquired title to his property by virtue of a deed from the Filanowski's. That deed described the property being conveyed as being bounded —
 "SOUTHWESTERLY; By land now or formerly of Wilson S. Kistler, 538.17 feet;"
The Filanowski-to-Gnazzo deed did not mention Mill Lane. Exhibit 35.
The Filanowskis acquired 130 Cherry Brook Road from the Bills in 1976. The Bills-to-Filanowski deed described the boundary in question as follows:
 "Southerly by a roadway known as Mill Lane, which roadway adjoins the northerly line of adjoining land of Charles Milton Quick;"
Exhibit 34. Charles Milton Quick was a previous owner of the CT Page 10543 Kistler property. Exhibits 18-21.
It appears the Filanowskis were over-generous in their conveyance to defendant Gnazzo. The deed by which the Filanowskis acquired the property described it as being bounded on the south by Mill Lane. Exhibit 34.
The court therefore finds that the defendant Gnazzo does not have fee title to Mill Lane by virtue of any deed of conveyance.
Defendant Gnazzo also "claims a fee simple absolute interest" in Mill Lane by "the adverse possession of the subject property by the Defendant and his predecessors in title." Answer and Special Defenses of the Defendant Douglas Gnazzo, March 16, 1992. [128] Since defendant Gnazzo acquired the property in 1981, he has treated the property as his own. He has done some work in maintaining it. He also had the State Highway Department divert water run-off from Cherry Brook Road's connection with Mill Lane. But he has owned this property only since 1981. This action was started in 1989. There was no real evidence of how his predecessors in title treated the property. In 1976, the Filanowskis arrogated Mill Lane to themselves. See Exhibit 36. But there was no evidence that they or any other predecessor in title used Mill Lane in a manner which would lead to a finding of adverse possession. Even if the Filanowskis' recording of the original of Exhibit 36 would lead to adverse possession, it (Exhibit 36) could not have been recorded before it was drawn in 1976. Adverse possession takes 15 years. C.G.S. 52-575. The court finds that the defendant could not have a fee interest in Mill Lane by adverse possession.
In 1840, the then owners of the land which became Mill Lane, the plaintiffs' and defendant's properties, executed a warranty deed as follows:
 "Volney and Linus Barber for the consideration of Eight Dollars, received to our full satisfaction of John W. Hargen and Anson Case, Selectmen and Agents of the Town of Canton, Do give grant, bargain, sell, and confirm unto the said Agents and the rest of the Inhabitants of Canton the following described real estate lying in Canton aforesaid for a public highway, it being and running from the grist mill now owned by Linus Barber situated on Cherry Brook so to the main highway running North and South through the Town; it being about thirty rods in length and two rods in CT Page 10544 width." Exhibit 1.
Exhibit 1 describes what that deed conveyed, namely "Do give grant, bargain, sell, and confirm unto the said Agents and the rest of the Inhabitants of Canton the following described real estate lying in Canton aforesaid for a public highway . . . ."
In American Trading Real Estate Properties, Inc., 215 Conn. 68
(1990), the Supreme Court held that the grant of "a certain narrow strip of land for the purpose of a road or passage way . . . being twenty feet in width and about nine hundred fifty feet in length . . ." conveyed "a fee simple interest."
The court equates the language in Exhibit 1 to the language in the deed which was the focus of American Trading. The court finds that what is now Mill Lane was conveyed to the Town of Canton in fee simple absolute by virtue of the warranty deed dated December 14, 1840. The conveyance of this land was "for a public highway." Exhibit 1. The court finds the land was conveyed to the Town of Canton for use as a public highway.
The court having made the findings that the land known as Mill Lane was conveyed to the Town of Canton in fee simple for use as a public highway, the result here is pretty much and/or largely pre-ordained by American Trading Real Estate Properties, Inc., 215 Conn. 68 (1990).
Much has been said in the parties' briefs about dedication and acceptance. The court is of the mind that dedication and acceptance are not of separate significance when the public highway was created by a deed conveying the fee to the municipality for a public highway. American Trading says, or at least implies as much:
 "In its interpretation of the public use requirement, the court relied, by way of analogy, on cases in which this court has ruled that, in order to establish the existence of a public highway, a party must prove that there was dedication as a highway on the part of the private landowner and an acceptance by the public authority. Meder v. Milford, 190 Conn. 72, 74, 458 A.2d 1158 (1983); Deer Island Assn. v. Trolle, supra, 207; A H Corporation v. Bridgeport, 180 Conn. 435, 439, 430 A.2d 25 (1980); DiCioccio v. Wethersfield, 146 Conn. 474, 479, 152 A.2d 308 (1959). CT Page 10545 These cases are, however, distinguishable. In contrast to this case, in which the defendant town acquired fee simple title, the public highway cases address the issue of whether a private landowner who has undisputably retained fee simple title to the property at issue has nevertheless manifested an intent to dedicate that property to public use. While some action indicating dedication of the roadway to public use might have provided persuasive evidence that the defendant held it for public use in this case, the lack of such an action by no means precludes a determination that the property was held for public use." American Trading Real Estate Properties, Inc. v. Trumbull, 215 Conn. 68, 77-78 (1990).
The deed itself amply shows that the road was to be for public use. The grantees, "John W. Hargen and Anson Case, Selectmen and Agents of the Town of Canton" paid "Eight Dollars" for "the real estate" "for a public highway." The court infers that the "Eight Dollars" was public money. The grantees dictated or at least acquiesced in the terms of the deed. The road provided the public, "the rest of the Inhabitants of Canton," access to "the grist mill now owned by Linus Barber [one of the grantors] situated on Cherry Brook." Furthermore, there was some evidence of use by the general public during this century.
The court finds and concludes that there was dedication and acceptance.
There was no evidence that the Town of Canton ever formally abandoned Mill Lane as a public highway. The town records were searched for any indication of abandonment.[3] None was found. The court finds that Mill Lane was never abandoned by the Town of Canton.
The final question is whether Mill Lane was and still is held for public use. This is important because both parties claim, particularly the defendant Gnazzo, that adverse possession or user, has taken place. Land held by a municipality is immune from such claims provided it is held for public use. This is so even if the municipality is not presently using the land.
 "The central message of this line of cases is that land is indeed held for public use even when a municipality is not presently making use of the land but is simply holding CT Page 10546 it for development at some later time. Absent some evidence of municipal intention to abandon its plans for future development of the municipal property, the land is immune from claims of adverse possession." American Trading Real Estate Properties, Inc. v. Trumbull, 215 Conn. 68, 79-80
(1990).
None of the parties has presented any evidence at all of what the Town of Canton's intentions are regarding Mill Lane. It may well be that the town authorities for some time have been unaware of its ownership of Mill Lane. But this does not avail the private parties (the Kistlers and Gnazzo) here. The Supreme Court has held unequivocally "that property that is held in fee simple ownership by municipalities must be presumed to be held for public use." American Trading @ 80.
Furthermore:
 "It follows that the party seeking title by adverse possession must bear the burden of rebutting that presumption. Municipal immunity from adverse possession is the rule and not the exception, and we have consistently held that the party seeking to acquire title by adverse possession bears the burden of proving all the elements of adverse possession. Roche v. Fairfield, 186 Conn. 490, 498, 442 A.2d 911 (1982); Loewenberg v. Wallace, 147 Conn. 689, 699, 166 A.2d 150 (1960). Moreover, the rationale underlying the immunity of municipalities from adverse possession, that the public should not lose its rights to property as a result of the inattention of a governmental entity; see G. Thompson, Real Property (1979) 2556, p. 69; applies with even greater force to situations involving undeveloped lands, which may, by their nature, garner even less attention from local governments suffering from the constraints of scarce fiscal resources." American Trading @ 80-81.
Since the court has had no evidence that the Town of Canton holds the Mill Lane for some non-public use or has abandoned its intention held in 1840 to hold it for public purposes, the court must conclude that the parties have failed to rebut the presumption that the Town of Canton holds Mill Lane for public use. It is immune from any claim(s) of adverse possession. American Trading @ 80-81. CT Page 10547
Plaintiffs are entitled to a judgment enjoining the defendant Gnazzo from interfering with their use of Mill Lane.
The parties jointly are to prepare the appropriate terms of the injunctive relief and submit it to the court within 10 days. If the parties are unable to agree on same, each party should submit the language deemed appropriate within 10 days.
Parker, J.